# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL BENNETT, Jr.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 09 C 6639 |
| v. ) | |
| ) | Magistrate Judge Geraldine Soat Brown |
| ) | |
| **OFFICER VAHL (#7350)**, a Chicago ) | |
| police officer, in his individual capacity; ) | |
| **OFFICER BLAIR (#18771)**, a Chicago ) | |
| police officer, in his individual capacity; ) | |
| **OFFICER BARSCH (#18387)**, a ) | |
| Chicago police officer, in his individual ) | |
| capacity; **SERGEANT O'DONNELL** ) | |
| **(#1927),** a Chicago police officer, in his ) | |
| individual capacity ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion for summary judgment brought by defendants Officers Vahl, Blair, and Barsch, and Sergeant O'Donnell (collectively, "defendants"). [Dkt 44.] Defendants argue that plaintiff Michael Bennett's claim is barred by the statute of limitations. (Defs.' Mot. at 1.) For the reasons set forth below, the court agrees. Defendants' motion is granted.

1

**Background**

1.    <u>Procedural history</u>

Bennett filed this lawsuit under 42 U.S.C. § 1983 *pro se*, alleging that on November 7, 2006, defendants unlawfully stopped him based on an unreliable anonymous tip and unlawfully searched him and the vehicle he had been driving. (Compl.) [Dkt 1.] The District Judge appointed counsel to represent Bennett. [Dkt 5.][1] The parties consented to magistrate judge jurisdiction. [Dkt 33.] Defendants subsequently filed the present motion for summary judgment limited to the issue of the statute of limitations. The relevant facts are substantially uncontested. Bennett admitted all of defendants' statements of fact pursuant to Local Rule 56.1. (Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 1 ("Pl.'s Resp.").) [Dkt 49.][2] Defendants denied only two of Bennett's additional statements of fact. (Defs.' Resp. Pl.'s 56.1 Add'l Stmt. ("Defs.' Resp.").) [Dkt 51.] After oral argument on the motion, Bennett was permitted to file an additional exhibit [dkt 54], and defendants filed a supplemental memorandum [dkt 55].

2.    <u>Factual background</u>

The timeline, which is materially undisputed, is critical to the motion.

On November 7, 2006, defendants, who are Chicago Police Officers, detained Bennett, who had just parked the white Volvo station wagon he had been driving, based upon an anonymous tip that a black man in a white station wagon bearing temporary tags had a gun under the hood of the

---

[1] The court thanks James T. Hultquist, the appointed counsel, and his co-counsel William Weltman for their able and professional representation of Mr. Bennett.

[2] As a result, many factual statements are cited herein to defendants' Local Rule 56.1 statement ("Defs.' 56.1 Stmt."). [Dkt 45.]

vehicle. (Defs.' 56.1 Stmt. ¶¶ 5-6.) Defendants conducted a pat-down of Bennett, searched the vehicle, found a gun under the hood, and arrested him. (Defs.' 56.1 Stmt ¶ 7.) Bennett was subsequently charged with various criminal offenses related to possession of the weapon. (*Id.* ¶ 8.) Thereafter, Bennett drafted two *pro se* motions entitled "Motion to Suppress Evidence and Quash Arrest," which he filed in his criminal case on July 17 and 20, 2007. (Defs.' 56.1 Stmt. ¶¶ 9-11; Ex. D, E.) Those motions are significant here because this lawsuit was not filed until more than two years later. As discussed below, the parties dispute whether the operative filing date for this lawsuit is August or October 2009, but in either event, it is more than two years after July 2007.

In his motions, Bennett argued, among other things, that the anonymous tip was an insufficient basis on which to detain him and search the vehicle and therefore violated his Fourth Amendment rights. (*Id.*) In his first motion, Bennett argued that defendants did not have probable cause because "[t]he Chicago Police had no substantial evidence to support an alleged anonymous tip . . . ." (*Id.*, Ex. D ¶ 1.) In the second motion, Bennett argued:

> [The] Police Officers did not have probable cause to search Defendant's father [*sic*] vehicle for gun, although officers had anonymous tip which described automobile driven by black male, while containing a firearm under the hood area of the vehicle, officers found Defendant standing nearby (outside of the vehicle matching that description []), nothing at the scene suggested that a crime had been committed and defendant was the perpetrator.

(*Id.*, Ex. E ¶ 3.)

At the time he filed those motions to suppress, Bennett possessed the following documents from the Chicago Police Department: his arrest report, the case report, a supplementary report, inventory reports, his own criminal record, and a report of his purported statements to police. (Defs.' 56.1 Stmt. ¶ 13.) The case report, dated November 7, 2006, stated that the police "had been given

3

info. by an Anonymous individual" which led them to detain Bennett, believing he and the vehicle he was driving matched the description given by the anonymous person. (Pl.'s Suppl., Ex. A.) [Dkt 54.] Bennett relied upon those documents in formulating his July 2007 motions. (Defs.' 56.1 Stmt. ¶¶ 14-15.) The record does not disclose when Bennett obtained those documents.

On November 14, 2007, a judge of the Circuit Court of Cook County, Illinois, held a hearing in the criminal case on Bennett's motion to suppress evidence at which Bennett proceeded *pro se*. (Pl.'s 56.1 Add'l Stmt. ¶ 1, Ex. A, Tr. Nov. 14, 2007.)[3] To Bennett, that hearing is significant on the present motion because, he says, the statute of limitations could not have begun to run until that hearing where he learned "key facts" about the circumstances of the stop and search. (Pl.'s Mem. at 6.) [Dkt 48.] Alternatively, he argues, if the statute of limitations began to run earlier, there should be equitable tolling because the criminal court judge's comments and ruling at the November 2007 hearing directed Bennett away from his potential claims. (*Id.* at 7-8.)

At the hearing, Bennett questioned defendant Vahl about the circumstances behind the anonymous tip, including how Vahl came into contact with the informant and whether the informant gave any basis for his information. (*Id.* at 50-57.) Vahl testified that the officers met the informant after pulling him over for a routine field interview an hour or two before they arrested Bennett. (*Id.* at 51-52.) He testified the officers had no contact with the anonymous informant prior to that day. (*Id.*)

During the hearing, the criminal court judge stated that he would decide whether the police

---

[3] There is some confusion in the record about the precise motion at issue at the hearing. The criminal court judge refers to a motion filed on October 26, 2007, which had two previous motions by Bennett attached as exhibits. (Tr. Nov. 17, 2007 at 3-4.) From the transcript, it appears that the motion at issue at the November hearing was substantially the same as Bennett's July motions, but a copy of the October 26, 2007 motion has not been included in the parties' submissions here.

had probable cause to arrest Bennett. (*Id*. at 10.) He suggested to Bennett that whether Bennett was in the car when the police detained him was significant, stating, "[I]f I believe that you weren't in the car, you win, right? Is that what you're arguing? . . . [I]f I believe the police officer that you were in the car, then you lose. Right?" (*Id.* at 9.)

The criminal court judge ultimately denied Bennett's motion, stating, "I find that the temporary detention was based on the informant's tip. I find that the search of the vehicle was based on consent, and that ultimately, your arrest was based on probable cause after the gun was recovered." (*Id*. at 142-43.)

On June 18, 2008, while Bennett was represented by a public defender in the criminal case, the same criminal court judge reversed his November 14, 2007 ruling, stating, "I was wrong because there was no lawyer standing between the defendant's pro se motion and this court to focus my attention on exactly what it is I should have considered in this motion." (Pl.'s 56.1 Add'l Stmt., Ex. B, Tr. June 18, 2008 at 3.) The judge went on to consider Vahl's testimony about the anonymous tip, and concluded that there were not sufficient indicia of reliability to provide a reasonable suspicion to support defendants' detaining Bennett under *Florida v. J.L.*, 529 U.S. 266 (2000). (*Id.* at 4-12.)[4] The judge ruled that, given the illegality of the stop, "everything that happens after the stop must be suppressed . . . ." (*Id.* at 11-12.) On July 11, 2008, the prosecutor dropped the charges against Bennett, and he was released from jail. (Defs.' Resp. ¶ 14.)

After his release, Bennett contacted several legal aid organizations to determine whether he had claims arising from defendants' conduct, but received no response. (*Id.* ¶ 15.) In September

---

[4] In *Florida v. J.L.*, the Supreme Court held that an anonymous tip without more will not justify a *Terry* stop and frisk. 529 U.S. 270-71.

2008, Bennett "signed a contract" with a lawyer to file a lawsuit, but in October 2008 that attorney informed Bennett that the attorney would not be filing a claim. (*Id.* ¶¶ 16-17.) On November 13, 2008, Bennett was taken into custody on unrelated charges and detained at the Cook County Department of Corrections. (*Id.* ¶ 18.) On March 18, 2009, he was transferred to Stateville Correctional Center. (*Id.*)

On October 21, 2009, Bennett's *pro se* complaint in this lawsuit was docketed. Bennett claims he certified his original complaint and mailed it "on or about August 2009." (Pl.'s 56.1 Add'l Stmt., Ex. C, Aff. of Michael Bennett ¶ 12.) The docket reflects that the complaint was postmarked October 15, 2009. [Dkt 1.]

**Legal Standard**

The court may properly grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Id.* at 255. The court may not make credibility determinations, "choose between competing inferences," or weigh the evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005); *accord Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009). While the moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted

in its favor; once it has met this burden the non-moving party must designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24.

## Discussion

**I.     Bennett's claim is barred by the statute of limitations.**

The parties agree that the statute of limitations period in this case is two years. Federal courts look to state law personal injury claims to determine the length of the statute of limitations in § 1983 cases. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). In Illinois, that period is two years. *Id.* at 387; 735 Ill. Comp. Stat. 5/13-202 (2008).

The core dispute on defendants' motion is the accrual date of Bennett's claim, *i.e.*, when the statute of limitations began to run. Defendants argue that Bennett's claim accrued on November 7, 2006, when the alleged injury occurred, or at the very latest on July 17, 2007, when, they argue, Bennett had information about defendants' reliance on an anonymous informant that forms the basis of his § 1983 claim. (Defs.' Mot. at 2; Defs.' Reply at 4-5.) [Dkt 50.] Either way, defendants argue, Bennett's October 2009 filing was untimely because it exceeded the two-year statute of limitations. Bennett, on the other hand, argues that his claim accrued no earlier than November 14, 2007, when he was able to question Vahl and discovered facts necessary to form a claim that the tip was unreliable and did not support the stop and search. (Pl.'s Mem. at 5.) Therefore, Bennett says, the limitations period did not expire until November 14, 2009, and his filing, whether in August or October 2009, was timely.

While state law sets the length of the limitations period, federal law governs the question of when a claim accrues. *Wallace*, 549 U.S. at 388. Accrual occurs when the plaintiff has a complete

7

and present cause of action, that is, when the plaintiff can file suit and obtain relief. *Id.*

Bennett alleges an unconstitutional stop and search that indisputably occurred on November 7, 2006, but he argues that a federal "discovery rule" sets the date on which he could have brought his claim. He cites *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992) ("Civil rights claims, therefore, accrue when the plaintiff knows or should know that his or constitutional rights have been violated.") *See also Behavioral Inst. of Ind., LLC. v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (1990) ("The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the 'discovery rule' of federal common law . . . ."). Bennett claims that he could not have discovered that his constitutional rights were violated until November 14, 2007, when he questioned Vahl about the circumstances of the anonymous tip. (Pl.'s Mem. at 6.)

In *Wallace,* the Supreme Court held that a § 1983 claim based on a false arrest accrues at the time the claimant becomes detained pursuant to legal process. *Wallace*, 549 U.S. at 397. District courts in this circuit disagree about whether, after *Wallace*, the discovery rule may be applied in a § 1983 action alleging a Fourth Amendment violation. *Compare Thomas v. City of Chicago*, 07 C 4969, 2009 WL 1444439 at *2-3 (N.D. Ill. May 21, 2009) (concluding that *Wallace*, read together with Seventh Circuit precedent, means that a § 1983 claim alleging a Fourth Amendment violation accrues at the time of the unlawful arrest, regardless of when the plaintiff learns that the officers lacked probable cause to make the arrest) *with Johnson v. Garza*, 564 F. Supp. 2d 845, 850-51 (N.D.

Ill. 2008) (interpreting *Wallace* as consistent with the discovery rule in Fourth Amendment cases).[5]

Here, if the statute began to run on the date Bennett was stopped in November 2006, the filing in 2009 was clearly outside the limitations period. But even assuming, *arguendo*, that the discovery rule may be applied, Bennett's claim accrued when he had enough information to argue to the criminal court that the stop was unconstitutional. At the latest that was July 17, 2007, when he filed a motion arguing that the stop and search violated his constitutional rights, specifically identifying the anonymous nature of the tip as failing to provide probable cause. That information was sufficient to enable him to assert a claim under § 1983, which requires allegations that defendants deprived him of a federal constitutional right and acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). In his first motion to suppress evidence and quash arrest in the criminal case dated July 17, 2007, he stated in part:

> [A]n anonymous tip 'is devoid of any of the underlying circumstances from which an officer can conclude that the informant was credible and his/her information reliable.' Without more, a faceless informer's tip does not give cause for the forcible stop of a person, let alone the search of his 'father's' car.

---

[5] In *Johnson*, the court held that the unlawful search and false arrest claims accrued when the plaintiff learned of the unlawful nature of the search. *Id.* at 850-852. If the discovery rule were not applied this way, the court said, "every person subjected to a search conducted pursuant to a warrant would have to file a protective Fourth Amendment lawsuit on the off chance that he or she might one day learn that the police had relied on false information to obtain it." *Id.* at 851. *But see Thomas*, 2009 WL 1444439 at *3 (stating that applying the discovery rule is "difficult to square" with *Wallace*).

Interestingly, in both cases the courts concluded that the claim could not be dismissed as time-barred. The court in *Johnson*, applying the discovery rule, determined that the claim did not accrue until various rulings were entered in the criminal case disclosing that the warrant at issue had been obtained through false statements. *Johnson*, 564 F. Supp. 2d at 851. In *Thomas*, the court held that the claim accrued at the time of the arrest, but the statute of limitations might be tolled during the time that the officers allegedly concealed their fabrication of evidence. *Thomas*, 2009 WL 1444439 at *4.

(Defs.' 56.1 Stmt., Ex. D ¶ 2 (citation omitted).) That argument, written by Bennett himself, is essentially the same one underlying his current claim that defendants, acting under color of state law, performed an unlawful stop and search based on an unreliable anonymous tip.

By making that argument to a court, Bennett showed that he believed no later than July 17, 2007, that he had suffered a violation of his rights. That is enough to begin the running of the statute of limitations under the discovery rule. *See Behavioral Inst. of Ind.*, 406 F.3d at 929-30 (holding that party's assertion of constitutional injury in review of municipal board decision demonstrated sufficient knowledge of potential § 1983 claim to start the statute of limitations running).

Notwithstanding his own argument in the criminal court, Bennett now argues that he could not have known that his constitutional rights were violated until Vahl testified in November 2007 that the tip was provided by an anonymous informant during a routine field interview. Only at that point, Bennett now argues, did he know that the tip lacked indicia of reliability and therefore could not be the basis of a constitutional *Terry* stop. (Pl's. Mem. at 6.) But Vahl's testimony only added further detail ("a routine field interview") to the description in the case report Bennett had before he filed his motions: that the stop was based on an anonymous tip and nothing else. (Tr. Nov. 14, 2007 at 52.) Bennett was able to apply his personal research regarding constitutional law to the facts in the case report and reach a conclusion no later than July 2007 that his constitutional rights had been violated. The fact that, in his view, Vahl's testimony confirmed the conclusion does not delay the accrual of his claim. "If a plaintiff were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run – for even after judgment, there is no certainty." *Cada*, 920 F.2d at 452.

Bennett's complaint was untimely, whether it is deemed filed in August or October 2009.

This, of course, is not a ruling on the merits of Bennett's constitutional claim. It is simply a ruling that if he had a claim based on the November 2006 stop and search, it was filed too late.

II.     **Equitable tolling cannot save Bennett's claim.**

Bennett alternatively argues that, if his claim accrued earlier than November 2007, the statute of limitations should be equitably tolled because the criminal court judge's statements and ruling at the November 14, 2007 hearing were extraordinary circumstances that justify Bennett's delay in filing the claim. (Pl.'s Mem. at 7.)

Where the statute of limitations has been borrowed from state law, so too are the state tolling doctrines, with some exceptions not applicable here. *See Wallace,* 549 U.S. at 394. Under Illinois law, equitable tolling may be invoked to suspend the running of the statute of limitations when: (1) a defendant has actively misled the plaintiff; (2) extraordinary circumstances have prevented the plaintiff from asserting his rights; or (3) the plaintiff timely but mistakenly asserted his rights in the wrong forum. *Clay v. Khul*, 727 N.E.2d 217, 223 (Ill. 2000). In this case, Bennett argues only the second ground, extraordinary circumstances. Such circumstances include disability, an irremediable lack of information, or other circumstances beyond the plaintiff's control. *Griffin v. Willoughby*, 867 N.E.2d 1007, 1016 (Ill. App. 4th Dist. 2006).

"Equitable tolling principles should be applied with caution." *Orange v. Burge*, 451 F. Supp. 2d 957, 963 (N.D. Ill. 2006) (internal quotations omitted). Even when applicable, equitable tolling does not give a plaintiff an indefinite extension of time; rather, it gives him "only the extra time that he needs," despite all due diligence on his part, to file his claim. *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996). It does not excuse a plaintiff who failed to exercise due diligence in pursuing

11

his claim. *Id.*; *Savory*, 469 F.3d at 673. Equitable tolling should not be applied in ways that trivialize and undercut the importance of statutes of limitations. *Cada*, 920 F.2d at 453.

Bennett argues that the criminal court judge's statements at the November 2007 hearing about whether Bennett was or was not in his car at the time of the arrest diverted him from his argument that the unreliable anonymous tip led to an unlawful detainment and search. (Pl.'s Mem. at 8.) Bennett claims this was an "extraordinary circumstance" that led him to believe he did not have a claim until the judge reversed his ruling in June 2008. (*Id.* at 8-9.) Bennett has not pointed to any cases where such a scenario has been found to warrant equitable tolling, nor has further research revealed one. Generally, though, "[m]istakes of law or ignorance of proper legal procedures" are not extraordinary circumstances that warrant equitable tolling. *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006); *see also Williams v. Sims*, 390 F.3d 958, 963 (7th Cir. 2004) (holding that reasonable mistakes of law are not a basis for equitable tolling); *U.S. ex rel Wages v. Hulick*, 508 F. Supp. 2d 660, 663-64 (N.D. Ill. 2007) (holding that even the uncertain state of the law did not justify the plaintiff's delay in bringing claim). Although the criminal court judge's focus at the November 2007 hearing may have been misplaced, the underlying facts giving rise to the civil claim remained the same, and Bennett had access to those facts no later than in July 2007. Indeed, Bennett did not abandon the theory that the stop and search was unconstitutional, notwithstanding the criminal judge's ruling in November. Rather, he and his counsel in the criminal case asked the criminal court judge to reconsider that ruling in June 2008.

Even assuming, *arguendo,* that the criminal court judge's November 2007 ruling was an extraordinary circumstance, equitable tolling principles still cannot save Bennett's claim. Bennett acknowledges that the criminal court judge reversed his ruling on June 18, 2008, and at that point

12

Bennett had all the knowledge necessary to pursue his claim. Bennett appears to argue that equitable tolling extends the limitation period for the time between the criminal court judge's initial ruling and his second ruling in favor of Bennett, a little over seven months. The Seventh Circuit has rejected that approach.

> We do not think equitable tolling should bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term . . . . It gives the plaintiff extra time if he needs it. If he doesn't need it, there is no basis for depriving the defendant of the protection of the statute of limitations.
>
> . . . . .
>
> [A] plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a reasonable amount of time after he has obtained, or by due diligence could have obtained, the necessary information.

*Cada*, 920 F.2d at 452. Where the extraordinary circumstances end after the claim arose but before the statute of limitations has run, the presumption is that the plaintiff should bring suit within the statutory period. *Id*. at 453 (holding that eight months interval between when the plaintiff had the information and the limitations date was "huge in the circumstances").[6] In Bennett's case, at the time of the second ruling in June 2008, the statute of limitations had not yet expired. Even if the accrual date is the earliest possible date, November 7, 2006, the date of the arrest, Bennett had

---

[6] Some circuits adopt the "stop the clock" approach to tolling: that the tolling event suspends the running of the statute until the tolling ends (which is the tolling rule applied when a putative class action is not certified, a very different circumstance. *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 561 (1974)). *See, e.g.,Cabello v. Fernandez-Larios,* 402 F.3d 1148, 1155-56 (11th Cir. 2005); *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1194 (9th Cir. 2001) Seventh Circuit authority is binding on this court, however. Furthermore, the interval between the criminal court judge's first and second rulings – seven months and four days – only gets Bennett over the statute of limitations bar *if* the accrual date is July 2007, not November 2006 (that is, if the discovery rule applies), and *if* the criminal court judge's first ruling is considered an "exceptional circumstance." As discussed above, the first condition is unclear as a matter of law, and, most importantly, Bennett has not produced any authority to support the second condition.

13

almost five months to file after the second ruling in June 2008 expressly adopting Bennett's theory and four months after he was released from custody. If the accrual date is extended by the discovery rule to July 2007, he had more than a year to file after the second ruling.

Equitable tolling could only have provided Bennett with a reasonable amount of time after June 2008 to file the claim, yet he did not do so until October 2009, fifteen months later (or thirteen months later, if one accepts his August 2009 filing theory). Bennett attempts to justify his failure to file during that time by noting that he was detained in Cook County Jail and Stateville Correctional Center for approximately eleven of those fifteen months, and that during the time he was not incarcerated he was waiting for word from an attorney about whether he had a claim. (Pl.'s Mem. at 9-10.)

Bennett's arguments are not sufficient to establish that he exercised due diligence in pursuing his claim after June 2008 and before the running of the limitations period. Bennett was free for four months beginning in July 2008. For some of that time, he may have been waiting on word from a lawyer but he knew by October 2008 (while he was still free) that the attorney would not be filing. Further, as defendants aptly point out, prisoners can file complaints *pro se* from Cook County Jail and Stateville. (Defs.' 56.1 Stmt. ¶ 21). In fact, Bennett ultimately filed the complaint in this case from Stateville. (*See* Compl.) Bennett certainly knew no later than June 2008 that he had a claim. Equitable tolling cannot justify the late filing, whether the filing is deemed in August or October 2009.

## CONCLUSION

For the reasons stated here, defendants' motion for summary judgment is granted. This case is dismissed with prejudice.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

June 10, 2011